# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-03055-01-CR-S-DW |
| | ) | |
| BURGESS JESSE PERRY, III, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court are defendant's Motions to Suppress Evidence of a search on July 10, 2003, and on November 19, 2004. After responses were filed by the United States, this matter was set for an evidentiary hearing. Defendant was present personally and with counsel Don Cooley. The United States was represented by Michael A. Jones, Deputy United States Attorney.

The first witness for the United States was Gary David Buerky, a deputy sheriff in Moniteau County, Missouri. Deputy Buerky has served in that capacity on a full-time basis since 1996. He was involved in the investigation of the alleged murder of Lesley Gregory. In connection with that investigation, the deputy was given information by an informant. The informant's information was included in an affidavit filed in support of a search warrant issued July 10, 2003, which is the subject of one of the motions. Deputy Buerky testified that the informant has been known to him for at least 10 years, and that he has proven to be reliable. The

1

specifics of his reliability were included in the affidavit. At the time the informant provided information for this warrant, he was in custody on state charges. The informant advised he was present in a shop in Douglas County, Missouri, when Ms. Gregory was shot. He was working in the shop hooking up some computers when he heard two people arguing. She was wanting drugs and a male voice replied, "you already owe me five thousand dollars." The argument continued, and he heard three shots. He then heard a moan and two more shots. He stated the shop belonged to an individual known to the informant as Dobbie, and that it was located in Douglas County, Missouri. Douglas County authorities were notified and arrangements were made to transport the informant to Douglas County. This was on July 8 or 9, 2003. The defendant remained in custody at all time. After arriving in Douglas County, contact was made with deputy sheriffs, one of whom was Ron Wallace. The informant was to give directions regarding where he had been the night before the murder and the next day, and the deputies would follow him to these locations. The informant advised that the day before the shooting, that he and the victim had gone to a residence and partied before they left and went to the residence belonging to Dobbie. He gave directions to the residence where they had partied , which was the defendant's residence, and then to the second residence where the murder took place. The body of Ms. Gregory was discovered in January of 2003, and an autopsy revealed five shots to the head. That information had not been made public.

On cross-examination, deputy Buerky acknowledged that the informant was in custody facing criminal charges and had suffered at least one prior felony conviction. He had contact with law enforcement on several other occasions involving either drugs or child support. This information was relayed to the authorities in Douglas County, Missouri. He acknowledged that

2

Case 6:05-cr-03055-DW   Document 37   Filed 09/21/06   Page 2 of 8

the body had been discovered six months prior to the informant providing information, and that the informant had been previously interviewed. The deputy also acknowledged that the information listed in the affidavit regarding the defendant's reliability was from June of 2003. Finally, the deputy acknowledged that the informant gave him no information regarding a cell phone or a purse.

The next witness for the United States was Ron Wallace, who worked for the Douglas County sheriff's office from June 1998 until June 2005. Mr. Wallace testified that he received information from Deputy Buerky of Moniteau County regarding a possible homicide in Douglas County, Missouri, and that Deputy Buerky brought an informant with him to Douglas County on the 9th of July, 2003. The informant had given information about two residences in Douglas County, and he located those residences for the authorities. Because of prior investigation, Mr. Wallace knew that the residences were owned by Doy Porter. The residences were located on County Road 206 and on County Road 215. While Mr. Porter owned both residences, the defendant was staying at the residence on County Road 206. After leading the deputies to the residences, the informant detailed what occurred the night before the murder and the day of the murder. On the night before the murder, four persons were present at defendant's residence--- the defendant, Mr. Porter, the informant and Ms. Gregory. They were using controlled substances all night. The informant further advised that the same four individuals were present the next day at Porter's house, when the murder occurred and he again verified that he heard five shots. After the shots were fired, he left and returned to the residence at County Road 206, the residence of the defendant. He did not know the name of the defendant as Burgess Perry, but rather Fred Mansker.

The Douglas County authorities were familiar with Mr. Porter, based upon earlier drug investigations. They were able to verify that he did, in fact, own the two residences referred to by the informant. While attempting to verify the information, the informant was present with them in their office when a Department of Revenue photograph of Mr. Porter was e-mailed to them. Immediately upon seeing the photograph, the informant stood up and said "that is the guy that killed Lisa Gregory." In addition to the information regarding the informant's reliability, which had been obtained from Deputy Buerky, the informant provided the Douglas County authorities with information regarding a stolen dune buggy, which was independently verified.

The deputy prepared the affidavit for the July 10 search warrant and took it to the prosecuting attorney, who reviewed it. The affidavit was signed in the prosecutor's presence. The application for search warrant was prepared by the prosecuting attorney's office, and that application included a list of items to be searched for in the opening paragraph. With regard to those items, Mr. Wallace recounted information provided by the informant that on the night before, and the day of, the murder, the victim had a purse and a Nextel cell phone. He advised that there were firearms at both the location on County Road 206 and County Road 210, and that he specifically mentioned a .22 short-barreled gun in Mr. Perry's residence. After the application was prepared, it was signed by the prosecuting attorney and the application, affidavit and search warrant were then taken to the circuit judge. The circuit judge examined the paperwork and signed the warrant. Mr. Wallace testified that after the judge signed the warrant, he believed he had a valid warrant and probable cause to search the residence. He relied on the judge, an individual he had worked with for five or six years, to determine the validity of the warrant. It

was acknowledged that subsequently the evidence from the search was suppressed by the same circuit judge upon motion in his court.

In November of 2004, Deputy Wallace secured an affidavit from a Mr. Jerry Miller, II. He came to the office and advised he wanted to talk to the deputy. He provided the information in the affidavit while the deputy typed it. The deputy was familiar with Mr. Miller only from family acquaintances and maybe a traffic ticket. The information Mr. Miller gave resulted in a search warrant being executed at Danita Porter's residence. Danita Porter is the sister of Doy Porter. As a result of that search, the information Mr. Miller provided was at least partially verified. Deputy Wallace then prepared an affidavit for the second search of defendant's residence, and he made reference to Miller's previous affidavit. He also included information provided by an individual identified only as Informant 48. That informant was interviewed on the 18th of November and his information was included in the search warrant affidavit. The documents were then taken to the prosecuting attorney, who reviewed the affidavits and Wallace signed his affidavit in the presence of the prosecuting attorney and had it notarized there. The application for the search warrant was prepared by the prosecuting attorney's office. It was signed by both the deputy and the prosecutor and a search warrant was prepared by the prosecuting attorney's office. All of the documents were then taken to the same circuit judge who issued the July 10, 2003 search warrant. The judge reviewed the documents and signed them. Deputy Wallace relied on the judge's issuance of the warrant as he conducted the search.

On cross-examination, Wallace acknowledged with regard to the July 10, 2003, warrant, that the items mentioned were involved in an incident that occurred eight months prior to the

5

time they were searching for them.  Wallace acknowledged that he did not include in his affidavit that the informant had been previously interviewed by the Moniteau County authorities before providing the information included in the affidavit.  He also did not include that the informant was a prior convicted felon or that he was charged and in custody at the time the information was secured from him.  This information was also not relayed to the prosecutor in any other form.  Deputy Wallace did not include information regarding how the individuals from Moniteau County came to Douglas County.  He also acknowledges that the word "they" in the affidavit, when referring to the informant, does not mean that there was more than one informant.  He acknowledged including in his affidavit that the informant said he was working on a computer at the time of the shooting, but he was unaware that any computers were actually recovered.  When questioned about the existence of the cell phone and purse, he stated the informant mentioned seeing these items at the defendant's home the night before the shooting.  He stated that he did not testify regarding this at the state suppression hearing because he was not asked.  Deputy Wallace acknowledged that when the Perry residence was searched, that he found no cell phone and no purse and, while he found one weapon resembling the description given by the informant, he found no property belonging to Lesley Gregory.  He also acknowledged that at no time was there any information regarding the murder weapon or anything else being removed from the Doy Porter residence and taken to the Perry residence.

With regard to the November 2004 search warrant, Wallace acknowledged that he was aware of the suppression motion that was sustained regarding the 2003 warrant.  Nonetheless, he included information about what had been seized as a result of that warrant in  the 2004 application.  He also acknowledges that there is no time frame in the 2004 affidavit of Mr. Miller

6

to establish when an individual named Fred provided Danita Porter methamphetamine. There is no time frame as to when he saw her use methamphetamine. He acknowledges that Mr. Miller never saw the man called Fred, and there is no description in the affidavit by address, direction or other means where the supposed drug sales took place. Finally, there is nothing in the affidavit to verify the accuracy of Informant 48's information.

Both search warrants were issued by a circuit judge. The deputy sheriff who applied for the warrant relied on the circuit judge's issuance of the warrant. There is no evidence that the circuit judge was misled by false information known to be false to the affiant. Further, the circuit judge did not abandon his neutral role and, in fact, subsequently suppressed the evidence obtained from the July 10, 2003 warrant. The question then becomes whether these affidavits were so lacking in probable cause as to make belief in it unreasonable or whether they were facially deficient when describing the place to be searched or things to be seized. The affidavit in support of the July 10 search warrant provided rich detailed information from a previously reliable informant and it is clearly not so lacking in probable cause as to make belief in it unreasonable. The affidavit in support of the November 2004 warrant provides information voluntarily given by a citizen, portions of which were verified, prior to the issuance of the warrant. The affiant included the description of the property to be searched. The description was based on his personal knowledge of where the person named Fred resided. Fred is a name previously used by the defendant in this case. Again, the affidavit is not so lacking in probable

7

cause, or the warrant facially deficient, as to make belief in it unreasonable. The officers acted in good faith reliance on the warrants. See *United States v. Leon*, 468 U.S. 897 (1984). It is therefore

      RECOMMENDED that defendant's Motions to Suppress be denied.

                                        /s/ James C. England
                                JAMES C. ENGLAND, Chief
                              United States Magistrate Judge

Date: September 21, 2006